OPINION
The State of Ohio, as plaintiff-appellant, appeals the decision of the Holmes County Court that suppressed all evidence, including test results and statements obtained from defendant-appellee Fred P. Hawkins, Jr., in the prosecution of one count of Prohibitions; Minors Under 21 Years [hereinafter underage consumption of alcohol], in violation of R. C. 4301.632.
 STATEMENT OF THE FACTS AND CASE
On December 14, 1998, appellee was charged in the Holmes County Court with one count of underage consumption of alcohol, in violation of R.C. 4301.632, a misdemeanor of the first degree. On December 21, 1998, appellee entered a plea of not guilty. On January 8, 1999, appellee filed a Motion to Suppress Evidence alleging that the officers did not have probable cause to make a warrantless arrest and to search him. The motion did not challenge the entry into the home, only the conduct directed at Hawkins. On January 25, 1999, the motion was heard by the Holmes County Court. The following evidence was adduced at the hearing: On December 12, 1998, deputies of the Holmes County Sheriff's Department went to a home in Holmes County, Ohio, to serve an arrest warrant on one of the tenants of the home. While serving the arrest warrant, Deputy David Peebles entered the home and observed 20 to 25 people ranging in age from 15 to 25 years. The officer also observed a 14 year old boy who was passed out in the living room. There was alcohol everywhere and the house smelled of alcohol. Deputy Tony Fry told Deputy Peebles that he saw several people through a window inside the living room with alcohol prior to the police entry into the house. As a result, Deputy Peebles gathered a group of the youth into the home's kitchen. Appellee Fred Hawkins, Jr., was one of those young people. Once the youths were in the kitchen, Deputy Peebles asked those individuals over the age of 21 years of age to identify themselves. As they identified themselves by showing identification to the Deputy, they were permitted to leave the kitchen and return to other areas of the home. Once those who identified themselves to be 21 years of age or older had left the kitchen, Deputy Peebles asked those who remained if anyone wanted to admit they had been drinking. Hawkins held up his hand. Deputy Peebles then approached Hawkins and asked him to take a deep breath, and breathe into Deputy Peebles' face. Hawkins obliged. Hawkins had an odor of alcohol about him. Upon being questioned by Officer Peebles, Hawkins answered that he was 18 years of age and had been drinking. At that point, Hawkins was moved to the other side of the kitchen and informed that he was under arrest for underage consumption of an alcoholic beverage. After being transported to the Holmes County Jail, Hawkins was read his Miranda rights. Thereafter, Hawkins confessed to underage drinking of alcohol, for which he was charged. On April 6, 1999, the court rendered a decision granting the Motion to Suppress all evidence. On April 8, 1999, the prosecuting attorney filed a timely certificate pursuant to Crim.R. 12(J), and this appeal as of right followed. It is from the April 6, 1999, Judgment Entry that the State prosecutes this appeal, raising the following assignments of error:
 ASSIGNMENT OF ERROR I
IT WAS CLEAR ERROR FOR THE COURT TO FIND THAT "THE OFFICER INDICATED THAT PEOPLE WOULD BE STOPPED AND DETAINED IF THEY TRIED TO LEAVE."
 ASSIGNMENT OF ERROR II
THE COURT'S IMPLICIT FINDING THAT THE APPELLEE WAS IN CUSTODY PRIOR TO HIS ARREST IS CLEAR ERROR PREJUDICIAL TO THE STATE.
 ASSIGNMENT OF ERROR III
THE COURT, IN RULING THAT THE OFFICER HAD NO PROBABLE CAUSE TO MAKE A WARRANTLESS ARREST COMMITTED CLEAR ERROR, PREJUDICIAL TO THE STATE.
 I
In the trial court's Judgment Entry, the trial court found that "[t]he Officer indicated that people would be stopped and detained if they tried to leave." The State argues that this finding was not supported by any evidence in the record and that to so find was clear error. We disagree. Initially, we note that there are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning (1982) 1 Ohio St.3d 19, 437 N.E.2d 583; State v. Klein (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141, State v. Guysinger (1993) 86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In such a case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172, State v. Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908, and State v. Guysinger (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. As the United States Supreme Court held in Ornelas v. U.S. (1996),517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." Since appellant's first assignment of error concerns the trial court's finding of a fact, we will consider whether the finding of fact is against the manifest weight of the evidence. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541 (citing State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717). However, because the trier of fact is in a better position to observe the witnesses' demeanor, the credibility of the witnesses is primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of syllabus. The Officer involved testified as follows: Q. So if someone, if Mr. Hawkins or anyone else would have went to go out the door, you would have told him to stop? A. I would have identified him, got his age at that point. That happened. There was several that happened with. Q. And you went out and brought them back in? A. I stepped over and as they came up I asked for I.D.'s, they showed to me. If it the I.D. said they were over twenty-one, they were free to go. Q. So you are saying that no one that you looked at that was under twenty-one attempted to leave at that time? A. Right. Supp. Hrg. Transcript, pp. 9-10.
Those who attempted to leave the kitchen were stopped and permitted to leave after their identification was checked to ensure they were 21 years of age or older. Thus, anyone, including Hawkins, who was under the age of 21 was not free to leave and would have been detained even if the detention were brief. Therefore, as applied to appellant, the trial court's finding was not against the manifest weight of the evidence. Appellant's first assignment of error is overruled.
 II
In the second assignment of error, the State contends that the trial court erred when it applied Miranda and implicitly found that Hawkins was in custody prior to his arrest. We agree with appellant that prior to his formal arrest, Hawkins was not in the custody of the officers as envisioned in Miranda. Further, we find the trial court erred when it applied Miranda to facts of this case. The trial court made the following findings: The Officer herded people into the kitchen and asked who had been consuming. The Officer indicated that people would be stopped and detained if they tried to leave. The Officer did not observe the defendant with an alcoholic beverage. The Officer approached the Defendant and had him breathe in the Officer [sic] face. Miranda warnings were never given.
Therefore, the Officers who did not observe Defendant violate any statute and who had no admission of any criminal violation by Defendant, lacked probable cause to detain and then arrest Defendant. . . . (Emphasis Added)
The trial court's Judgment Entry specifically notices that appellant was not given a Miranda warning. In Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the United States Supreme Court found that: "[t]he prosecution may not use statements, whether culpatory or inculpatory, stemming from custodial interrogation of [a] defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he had a right to the presence of an attorney, either retained or appointed." Id., at 444, 86 S.Ct., at 1612 (footnote omitted).
It appears the trial court implicitly found that appellee was in police custody and interrogated without first being advised of his Miranda rights. However, the United States Supreme Court has found that law enforcement officials may investigate suspicious circumstances without implicating Miranda protections. The United States Supreme Court has stated that: Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose "observations lead him reasonably to suspect" that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to "investigate the circumstances that provoke suspicion." United States v. Brignoni-Ponce, 422 U.S. 873, 881, 95 S.Ct. 2574, 2580,45 L.Ed.2d 607 (1975). "[T]he stop and inquiry must be `reasonably related in scope to the justification for their initiation.'" Ibid. (quoting Terry v. Ohio, supra, 392 U.S., at 29, 88 S.Ct., at 1884.) Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released. The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that Terry stops are subject to the dictates of Miranda.
Berkemer v. McCarty (1984), 468 U.S. 420, 104 S.Ct. 3138,82 L.Ed.2d 317 (footnotes omitted).
In the case sub judice, the proper law to apply to the facts before the trial court was Berkemer, supra. The officers had reasonable suspicion that the crime of underage consumption of alcohol was being committed. The officer saw several young people, appearing to be under the age of twenty-one, under the legal age for consumption of alcohol, in a house with beer cans everywhere and which smelled of alcohol. Upon entering the house, a fourteen year old child was found passed out on the floor. These observations amount to reasonable suspicion sufficient to justify investigation of underage consumption of alcohol, including the asking of a moderate number of questions to confirm or dispel the officer's concerns. We find that the detention and manner in which the questions were asked were not overly threatening or intimidating and were not directed to any individual but rather were asked of a group of young people. Therefore, we find that appellant was not in custody as defined by Miranda at the time that the group of young people were asked if anyone had been drinking alcohol and, pursuant to Berkemer, appellant was justifiably detained so that the officer could investigate the circumstances which provoked suspicion of underage drinking. As such, Miranda was inapplicable and Miranda warnings were not required. Therefore, we find it was error for the trial court to apply Miranda and suppress statements made by appellee. Appellant's second assignment of error is sustained.
 III
In the third assignment of error, the State argues that the trial court's finding that the officer had no probable cause to make a warrantless arrest was error. In response, appellee argues that an officer does not have authority to arrest an individual for a misdemeanor under these circumstances, citing this court to R.C.2935.03(A) and State v. Reymann (1989), 55 Ohio App.3d 222,563 N.E.2d 749. R.C. 2935.03(A) states: (A)(1) A sheriff, deputy sheriff, marshal, deputy marshal, municipal police officer, . . . shall arrest and detain, until a warrant can be obtained, a person found violating, within the limits of the political subdivision, . . . and a municipal corporation located within its territorial jurisdiction, . . . an ordinance of a municipal corporation, or a resolution of a township.
Therefore, an officer may make a warrantless arrest of a person for the commission of a misdemeanor in the officer's presence. State v. Mathews (1976), 46 Ohio St.2d 72, 75, 346 N.E.2d 151. However, even if a misdemeanor is not observed directly by the officer, the officer may make a warrantless arrest where, "from the surrounding circumstances, including admissions by the defendant, the officer is able to reasonably conclude that an offense has been committed." State v. Reymann,55 Ohio App.3d at 224 (citing State v. Stacy (1983), 9 Ohio App.3d 55,458 N.E.2d 403). "What is required for a valid warrantless arrest is not that the officer have absolute knowledge that a misdemeanor is being committed in the sense of possessing evidence sufficient to support a conviction after trial, but, rather, that he be in a position to form a reasonable belief that a misdemeanor is being committed, based upon evidence perceived through his own senses." Id. (quoting Columbus v. Lenear (1984), 16 Ohio App.3d 466, 468,476 N.E.2d 1085, 1088). At the point at which appellant was arrested by the officer, the officer had determined appellant's age to be less than 21 years of age, the legal age for consumption of alcohol, Hawkins had admitted drinking alcohol, and the officer had smelled alcohol on appellant's breath. The officer could reasonably conclude that the offense of underage consumption of alcohol had occurred.
Appellant's third assignment of error is sustained.
The Judgment of the Holmes County Court is reversed in part and remanded back to the trial court for proceedings consistent with this opinion.
By EDWARDS, J. GWIN, P.J. and WISE, J. concurs.