[Cite as *State v. Wigle*, 2011-Ohio-6239.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

DAVID C. WIGLE

    Appellant

C.A. No.    25593

APPEAL FROM JUDGMENT
ENTERED IN THE
AKRON MUNICIPAL COURT
COUNTY OF SUMMIT, OHIO
CASE No.    10-CRB-4268

DECISION AND JOURNAL ENTRY

Dated: December 7, 2011

MOORE, Judge.

{¶1}    Appellant, David Wigle, appeals the judgment of the Akron Municipal Court. This Court affirms.

I.

{¶2}    On April 25, 2010, appellant, David Wigle, called police because his neighbor, Nancy Pashley, allegedly trespassed on his property and threatened his sons. Officers arrived at Wigle's home and were allowed into the home by Wigle's wife, Nancy. They proceeded to the backyard to discuss the allegations with Wigle. After hearing his complaint, the officers went next door to investigate. Wigle returned inside his home, made popcorn, and sat down to watch a movie.

{¶3} After questioning Pashley, the officers learned that she had a protection order against Wigle from the Summit County Court of Common Pleas. She played a video from her home security camera for the officers. The video was from the previous day and showed Wigle removing "ornamental grass" from her property. The officers spoke with their supervisor and were advised that a violation of a protection order should result in an arrest.

{¶4} The officers returned to Wigle's home and were admitted by his wife. They advised Wigle of the video demonstrating that he had violated the protection order, and told him that he was under arrest for the violation. Wigle became argumentative and told the officers that he was not going to jail. He became loud, angry, made fists and took a fighting stance toward the officers. The officers drew their tasers and, when it had no effect, Wigle challenged them to tase him again. The officers also used pepper spray to gain compliance. The pepper spray brought Wigle to the floor with his hands underneath him. His behavior was described by the officers as violent, turbulent and alarming. Wigle's son, Michael Wigle, used a cell phone to record video footage of portions of the officers' efforts to arrest Wigle.

{¶5} On April 25, 2010, Wigle was charged with violating a protection order in violation of R.C. 2919.27, disorderly conduct in violation of Akron City Code 132.01(A), and resisting arrest in violation of R.C. 2921.33. He entered a plea of not guilty on April 29, 2010. On May 31, 2010, Wigle filed a motion for a bill of particulars, which was denied on July 20, 2010. He also filed a motion to suppress defendant's statements on June 3, 2010, which was denied on June 25, 2010. He filed a motion for severance on July 9, 2010, and the trial court denied the motion on July 13, 2010.

{¶6} Wigle also filed a motion to dismiss the protection order violation as unconstitutionally applied, and a motion to suppress the video taken by the victim neighbor, and

multiple motions for discovery. The trial court overruled the motion to dismiss and the motion to suppress. The State contends it provided Wigle open file discovery.

{¶7} A jury trial was conducted on July 22 and July 23, 2010. The jury returned a verdict of guilty on the resisting arrest and disorderly conduct charges, and not guilty on the charge of violating protection order. The trial court ordered a pre-sentence investigation and mental evaluation of Wigle. On July 30, 2010, Wigle was sentenced to 90 days of incarceration with 80 days suspended and ordered to undergo anger management treatment on the resisting arrest conviction. On the disorderly conduct conviction, Wigle was sentenced to 30 days of incarceration with 20 days suspended. The sentences were ordered to be served concurrently.

{¶8} Wigle timely filed a notice of appeal. He raises four assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

"THE TRIAL COURT ERRED IN FAILING TO SUSTAIN [WIGLE'S] OBJECTIONS AND INSTRUCT THE JURY REGARDING IMPROPER WORDS BY THE PROSECUTOR IN CLOSING."

{¶9} In his first assignment of error, Wigle argues that the trial court erred in failing to sustain his objections and properly instruct the jury regarding improper words used by the prosecutor in his closing arguments. We do not agree.

{¶10} "Generally during closing argument, the prosecution is entitled to a certain amount of latitude. The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper, and, if so, whether they prejudicially affected substantial rights of the defendant." (Internal citations and quotations omitted). *State v. Jones*, 9th Dist. No. 24776, 2010-Ohio-351, at ¶19, quoting *State v. Smith* (1984), 14 Ohio St.3d 13, 14. The appellant must

demonstrate that there is "a reasonable probability that but for the prosecutor's misconduct, the result of the proceeding would have been different." *State v. Overholt*, 9th Dist. No. 02CA0108-M, 2003-Ohio-3500, at ¶47. In addition, "[c]omments made in closing argument are not viewed in isolation, rather the closing argument is reviewed in its entirety to determine whether remarks by the prosecutor were prejudicial." *State v. Henry*, 9th Dist. No. 02CA008170, 2003-Ohio-3151, at ¶28, quoting *State v. Smith* (Jan. 17, 2001), 9th Dist. No. 99CA007451, at *1.

**{¶11}** During closing arguments, Wigle objected to the prosecutor's comments concerning the officers' entry into the home and its effect on the charge of resisting arrest. R.C. 2921.33(A) states: "No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." A lawful arrest is an element of the crime of resisting arrest. R.C. 2921.33; *State v. Vactor*, 9th Dist. No. 02CA008068, 2003-Ohio-7195, at ¶34. "An arrest is 'lawful' if the surrounding circumstances would give a reasonable police officer cause to believe that an offense has been or is being committed." *State v. Sansalone* (1991), 71 Ohio App.3d 284, 285-286. Throughout the trial, Wigle argued that because the arrest occurred inside of Wigle's home, the consent of entry to the home was an issue of fact to be decided by the jury in determining the lawfulness of the arrest. During closing arguments, the prosecutor told the jury that if a defendant questions whether an entry was lawful, "the proper time to address that is prior to trial with a motion to suppress. That way the judge can evaluate what happened and we might not even be here today had that been done, but it wasn't." Defense counsel objected, and the trial court overruled the objection. The prosecutor went on to say that "[t]he entry into the home is not an issue for you to consider, because it should have been addressed prior to trial. It was not, so that is not something for you to consider today." Defense counsel renewed his objection after this statement.

**{¶12}** In his brief, Wigle argues that the prosecutor commented on the lawfulness of the officers' entry into the home, and his comments removed the State's burden to prove the element. Assuming without deciding that the statement was improper, we conclude that there is no "reasonable probability that but for the prosecutor's [alleged] misconduct, the result of the proceeding would have been different." *Overholt* at ¶47.

**{¶13}** "Isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." *State v. Hill* (1996), 75 Ohio St.3d 195, 204, citing *Donnelly v. DeChristoforo* (1974), 416 U.S. 637, 647. Wigle contends that the issue at trial was whether or not Wigle's wife gave the officers her consent to enter their home. There was uncontroverted testimony that Wigle initially called the police to his home to report a complaint regarding his neighbor. The officers were initially invited into the home by Wigle's wife, and she directed them to the backyard to speak with Wigle. After going next door and speaking with the neighbor, the police returned to Wigle's home to confront him regarding the video tape and the violation of a protection order. Officer Stanar testified as to the wife's consent to enter the home. Wigle, his wife, and his son testified to the contrary. This was an issue of disputed fact to be determined by the jury. The jury is in the best position to judge the credibility of witnesses because the jury "is best able to view witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Cook*, 9th Dist. No. 21185, 2003-Ohio-727, at ¶30, quoting *Giurbino v. Giurbino* (1993), 89 Ohio App.3d 646, 659.

**{¶14}** The trial court permitted the defendant to pursue the issue of consent during cross-examination of the officers, direct examination of the defense witnesses, and to argue it during closing arguments. The trial court properly instructed the jury as to the essential elements

of resisting arrest, including the fact that the State was required to prove that the arrest was lawful and that the officers "had the authority to make the arrest at the time and place where the alleged resisting or interference took place[.]" Wigle has not argued that the definition it gave was incorrect. Finally, the trial court instructed the jury that the closing arguments presented by the State and the defendant "are not to be construed [] as evidence in this case or instructions on the law." See *State v. Boots* (Nov. 9, 2001), 2d Dist. No. 2001 CA 1542, at *2 (concluding defendant was not prejudiced by prosecutor's incorrect definition of reasonable doubt because "[t]he trial court made clear to the jurors that they were required to apply the law as set forth by the court, and the trial court properly defined reasonable doubt and proof beyond a reasonable doubt for the jurors in open court and in its written instructions to the jury.").

{¶15} In viewing the prosecutor's closing comments in their totality, we conclude that Wigle has failed to demonstrate that the comments prejudicially affected his substantial rights or that, had the statements not been allowed, the result of the case would have been different. Accordingly, his first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

"THE TRIAL COURT ERRED BY FAILING TO GRANT [WIGLE'S] MOTION TO SEVER THE CHARGES, THUS PREJUDICING [HIM] AND CAUSING SUCH CONFUSION IN THE JURY AS TO CAUSE AN UNFAIR TRIAL."

{¶16} In his second assignment of error, Wigle argues that the trial court erred when it failed to grant his motion to sever the charges. We do not agree.

{¶17} "The law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged 'are of the same or similar character.'" *State v. Lott* (1990), 51 Ohio St.3d 160, 163, quoting Crim.R. 8(A). A defendant claiming that the trial court erred in denying a motion to sever must affirmatively show that his rights were prejudiced and that the trial court

abused its discretion in refusing separate trials. *State v. Torres* (1981), 66 Ohio St.2d 340, 343. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621.

**{¶18}** The State argues that Wigle has forfeited this argument because he failed to renew his motion when the state rested or at the close of evidence. However, that waiver only applies if the defendant moves to sever pursuant to Crim.R. 14. See *State v. Smith*, 9th Dist. No. 25069, 2010-Ohio-3983, at ¶21. This Court has previously held that "[w]hile a defendant's failure to renew a motion to sever based upon Rule 14 results in a forfeiture of that issue, 'the same is not true for a motion based upon Rule 8[.]'" *State v. Hatfield*, 9th Dist. No. 23716, 2008-Ohio-2431, at ¶14, quoting *State v. Williams*, 9th Dist. No. 23560, 2008-Ohio-1048, at ¶52 (Dickinson, J., concurring).

**{¶19}** Crim.R. 8(A) provides:

"Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."

**{¶20}** Crim.R. 14 provides:

"If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires."

**{¶21}** "The difference between the rules is that Rule 8 only addresses the joinder of multiple charges in the same indictment while Rule 14 also addresses the joinder of completely

separate indictments." *Hatfield* at ¶14, citing *United States v. Terry* (C.A.9, 1990), 911 F.2d 272, 277-78. Here, Wigle's motion for separate trials only mentioned Crim.R. 8, and the charges stem from the same compliant. Therefore, Crim.R. 8 is the applicable rule. Because the failure to renew a motion to sever based upon Crim.R. 8 does not result in a forfeiture of that issue, Wigle has not forfeited his argument. *Hatfield* at ¶14.

{¶22} "When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct." *State v. Schaim* (1992), 65 Ohio St.3d 51, 59. See, also, *State v. Singfield* (Mar. 27, 1996), 9th Dist. No. 17160, at *8.

{¶23} In a case similar to this, the defendant argued that the trial court erred in failing to sever the aggravated burglary charge from the resisting arrest charge because "the offenses were committed at separate times, in separate locations, and involved separate police officers." *State v. Porter* (Dec. 24, 1997), 9th Dist. No. 18384, at *2. This Court rejected Porter's arguments and concluded that the charges were properly joined pursuant to Crim.R. 8. "The charge of resisting arrest resulted from defendant's actions during the investigation of the burglary. Defendant was immediately pursued from the burglary scene, and the two officers originally investigating the burglary * * * were present during the subsequent struggle and eventual apprehension." Id. at *3, citing *State v. Cisternino* (Oct. 27, 1994), 8th Dist. No. 66387 (concluding that joinder was proper when violations occurring approximately one week apart were "interrelated"). Here, as in *Porter*, the charge of resisting arrest occurred while the officers were investigating the civil protection order violation. We cannot conclude that joinder was improper simply because the crimes occurred on two separate dates.

{¶24} Wigle further argues that the counts should have been severed because the evidence "was not simple and distinct enough." We do not agree. Here, as in *Porter*, "the evidence of each charge was simple and direct, and the testimony provided by the State's witnesses covered in detail the events leading up to the charges." Id. at *3. Wigle's neighbor, Pashley, testified regarding the protection order violation. She claimed that Wigle removed "ornamental grass" from her property. After seeing video evidence of the allegation, the officers returned to Wigle's home to arrest him for the violation. The arresting officers testified that Wigle became argumentative and refused to cooperate. They were forced to use tasers and pepper spray to gain compliance. This evidence led to the resisting arrest and disorderly conduct charges. "The jury was not at risk of confusing the evidence such that the charges should have been severed." Id. Furthermore, the fact that the jury acquitted Wigle of the protection order violation, and convicted him of the remaining charges demonstrates that the jury was capable of separating the issues. Accordingly, Wigle's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

"THE TRIAL COURT ERRED IN DENYING THE BILL OF PARTICULARS TIMELY REQUESTED BY [WIGLE], AND SUCH DENIAL PREJUDICED [HIM]."

{¶25} In his third assignment of error, Wigle argues that the trial court erred in denying his request for a bill of particulars. We do not agree.

{¶26} Upon review of the record, it is apparent that the trial court properly overruled Wigle's request, as it was untimely. Wigle was arraigned on April 29, 2010, and he filed his motion for the bill of particulars on May 31, 2010. Crim.R. 7(E) requires that motions for a bill of particulars be filed within twenty-one days of the arraignment. See *State v. Maken* (Dec. 22, 2000), 2d Dist. No. 17577. The trial court determined that Crim.R. 7(E) was complied with by

open-file discovery. We need not reach that issue because the request was untimely. Accordingly, Wigle's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

"[THE] TRIAL COURT ERRED IN DENYING [THE] MOTION TO SUPPRESS STATEMENTS OF [WIGLE] FOR THE REASON THAT ARRESTING OFFICERS FAILED TO GIVE MIRANDA WARNINGS AND MADE ILLEGAL ENTRY INTO [HIS] HOME."

{¶27} In his fourth assignment of error, Wigle argues that the trial court erred in denying his motion to suppress his statements because the officers failed to give Miranda warnings and made an illegal entry into his home. We do not agree.

{¶28} The review of a motion to suppress presents a mixed question of fact and law for an appellate court. *State v. Yeager*, 9th Dist. Nos. 21091, 21112, and 21120, 2003-Ohio-1808, at ¶5, citing *State v. Long* (1998), 127 Ohio App.3d 328, 332. This Court "is bound to accept factual determinations of the trial court made during the suppression hearing so long as they are supported by competent and credible evidence." *State v. Robinson* (Oct. 25, 2000), 9th Dist. No. 19905, at *2, quoting *State v. Searls* (1997), 118 Ohio App.3d 739, 741. However, an appellate court reviews de novo the trial court's application of the law to those facts. Id.

{¶29} In his motion to suppress, Wigle argued that his statements must be suppressed because he was "without benefit of the 'Miranda warning.'" The trial court noted that "[o]nly a custodial interrogation triggers the need for a Miranda rights warning." See *State v. Trent* (Dec. 23, 1999), 2d Dist. No. 17705. The trial court denied the motion because there was no custodial interrogation, Wigle was placed under arrest and handcuffed almost immediately, and because his statements would be indicative of whether or not he resisted arrest.

{¶30} Our review of the record indicates that there was no custodial interrogation, and the statements made by Wigle were not in response to any question from the officer. See *State v.*

*Solomon* (Sept. 27, 1978), 9th Dist. No. 8862. Prior to his arrest, the officers inquired why Wigle went on his neighbor's property. He responded that it was not him and that he did not do anything. He then became loud and argumentative. Officer Harrison testified that after Wigle was told that he was under arrest, Wigle responded, "[N]o I'm not going to jail. No. I'm not going. You'll have to tase me."

{¶31} "The law of Miranda * * * has no application to purely voluntary statements which are not the result of 'express questioning or its functional equivalent.'" *State v. Coleman* (1989), 45 Ohio St.3d 298, 306, certiorari denied (1990), 493 U.S. 1051, quoting *Rhode Island v. Innis* (1980), 446 U.S. 291, 300-01. "It is the premise of Miranda that the danger of coercion results from the interaction of custody and official interrogation." *Illinois v. Perkins* (1990), 496 U.S. 292, 297. Because there was no custodial interrogation, and because the officers asked no questions after placing Wigle under arrest, the trial court properly denied the motion to suppress.

{¶32} Wigle further argues that the statements should be suppressed due to an illegal entry into the home. However, the motion to suppress filed with the trial court only argued that the evidence should be suppressed due to a Miranda violation. "An appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. Williams* (1977), 51 Ohio St.2d 112, paragraph one of the syllabus, citing *State v. Glaros* (1960), 170 Ohio St. 471. We decline to address this argument that could have been raised in the trial court. Accordingly, Wigle's fourth assignment of error is overruled.

III.

**{¶33}** Wigle's assignments of error are overruled. The judgment of the Akron Municipal Court is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

WHITMORE, P. J.
DICKINSON, J.
CONCUR

APPEARANCES:

ROBERT T. LYNCH, Attorney at Law, for Appellant.

CHERI B. CUNNINGHAM, Director of Law, DOUGLAS J. POWLEY, Chief City Prosecutor, and CARA KENNERLY-FORD, Assistant City Prosecutor, for Appellee.